[Sac. No. 7278. In Bank. June 29, 1961.]

JOHN WYNNE HERRON et al., Plaintiffs and Appellants, v. STATE FARM MUTUAL INSURANCE COMPANY et al., Defendants and Respondents.

John Wynne Herron, Mansfield Davis and Herron & Winn, in pro. per., for Plaintiffs and Appellants.

Bledsoe, Smith, Cathcart, Johnson & Phelps, William D. McDowell and Robert Seligson for Defendants and Respondents.

GIBSON, C. J.—Plaintiffs, attorneys at law, brought this action against Mr. and Mrs. Donald Halverson for breach of contract and against State Farm Mutual Insurance Company and its agent, Anthony Caruso, for intentional interference with contractual relations. The Halversons were not served, and a demurrer of State Farm and Caruso (who will be referred to as defendants) was sustained without leave to amend. Plaintiffs have appealed from the ensuing judgment.

The following is a summary of plaintiffs' allegations: The Halversons entered into a contingent fee contract with plaintiffs concerning claims reasonably worth $60,000 for personal injuries sustained in an automobile accident caused by the negligence of a person insured by State Farm. Plaintiffs were to advance all expenses necessary for the preparation of the case and for court costs and were to receive one third of the amount of the recovery remaining after deduction of the costs. No settlement was to be made without the consent of plaintiffs and the Halversons, and in the event there was no recovery plaintiffs were to receive nothing for their services or for costs advanced. Plaintiffs notified defendants of the agreement immediately after its execution, and they proceeded

to hire private investigators, photographers, and a draftsman, make an investigation, and incur expenses in the amount of $1,250. Defendants, by telling the Halversons that they did not need an attorney and that a satisfactory settlement would be made, induced them to breach the contingent fee contract and to discharge plaintiffs and deprive them of the benefits of the contract and the expenses incurred for investigation and preparation. Defendants assisted the Halversons in preparing letters which informed plaintiffs of their dismissal. The conduct of defendants was maliciously designed to injure plaintiffs' rights and lawful business, and it violated the rules of the National Conference Committee on Adjusters of which State Farm or its agents are members. The rules provide, in part, that an insurance company will not deal directly with any claimant represented by an attorney without the consent of the attorney and will not advise the claimant to refrain from seeking legal advice or retaining counsel to protect his interest. As a result of the conduct of defendants, plaintiffs suffered the loss of the expenses incurred in investigation and preparation and did not receive their one-third contingent fee.

Plaintiffs prayed for judgment against defendants for $20,000 or one third of the judgment or settlement recovered by the Halversons, whichever is the lesser, and, in addition, for $25,000 punitive damages.

An action will lie for the intentional interference by a third person with a contractual relationship either by unlawful means or by means otherwise lawful when there is a lack of sufficient justification. (*Lipman* v. *Brisbane Elementary Sch. Dist.*, 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465] ; *Fifield Manor* v. *Finston,* 54 Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073] ; *Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 [112 P.2d 631].) There is no valid reason why this rule should not be applied to an attorney's contingent fee contract. Such an agreement is a legal and valid contract entitled to the protection of the law, and an attorney who is wrongfully discharged is generally entitled to the same amount of compensation as if he had completed the contemplated services. (*Jones* v. *Martin,* 41 Cal.2d 23, 27 [256 P.2d 905].) While a client is permitted to discharge his attorney without cause, this is allowed not because the attorney's interest in performing his services and obtaining his fee is unworthy of protection but because

of the importance of the client's interest in the successful prosecution of his cause of action. (*Gage* v. *Atwater,* 136 Cal. 170, 172 [68 P. 581].) ▮ An attorney's interest in his contingent fee agreement is greater than that of a party to a contract terminable at will, as to which it has been held that an intentional and unjustifiable interference is actionable. (*Speegle* v. *Board of Fire Underwriters,* 29 Cal.2d 34, 39 [172 P.2d 867]; *Freed* v. *Manchester Service, Inc.,* 165 Cal.App.2d 186, 188 [331 P.2d 689].)

Our conclusion that intentional interference with a contingent fee contract may give rise to liability is supported by cases from several jurisdictions. (*Employers Liability Assurance Corp.* v. *Freeman,* 229 F.2d 547, 549 [Oklahoma law]; *State Farm Fire Ins. Co.* v. *Gregory,* 184 F.2d 447, 448 [South Carolina law]; *Bennett* v. *Sinclair Nav. Co.,* 33 F.Supp. 14, 15 et seq. [Pennsylvania law]; *Lurie* v. *New Amsterdam Casualty Co.,* 270 N.Y. 379 [1 N.E.2d 472, 473]; *Klauder* v. *Cregar,* 327 Pa. 1 [192 A. 667, 668 et seq.]; *Keels* v. *Powell,* 207 S.C. 97 [34 S.E.2d 482, 484]; cf. *Greenberg* v. *Panama Transport Co.,* 185 F.Supp. 320, 324-325; *State Farm Mutual Automobile Insurance Co.* v. *Ganz,* (Fla. App.) 119 So.2d 319, 320 et seq.) Cases relied upon by defendants, such as *Herbits* v. *Constitution Indemnity Co.,* 279 Mass. 539 [181 N.E. 723, 724-725], and *Krause* v. *Hartford Acc. & Indem. Co.,* 331 Mich. 19 [49 N.W.2d 41, 44-45], which involve settlements by clients without the consent of their attorneys, are distinguishable. In none of them were the clients induced, as a means of obtaining the settlements, to repudiate the contracts with their attorneys and to refuse to pay them. In the present case plaintiffs do not complain because there may have been a settlement but because defendants induced the Halversons to repudiate the contract and deprive plaintiffs of its benefits.

▮ Whether an intentional interference by a third party is justifiable depends upon a balancing of the importance, social and private, of the objective advanced by the interference against the importance of the interest interfered with, considering all circumstances including the nature of the actor's conduct and the relationship between the parties. (*Imperial Ice Co.* v. *Rossier,* 18 Cal.2d 33, 35 et seq. [112 P.2d 631]; *Freed* v. *Manchester Service, Inc.,* 165 Cal.App.2d 186, 190-191 [331 P.2d 689]; *Masoni* v. *Board of Trade of San Francisco,* 119 Cal.App.2d 738, 742-743 [260 P.2d 205]; see Rest., Torts, § 767; Prosser on Torts [2d ed. 1955], pp. 735

et seq.) ▮ Justification is an affirmative defense and may not be considered as supporting the trial court's action in sustaining a demurrer unless it appears on the face of the complaint. (*Collins* v. *Vickter Manor, Inc.*, 47 Cal.2d 875, 883 [306 P.2d 783]; *Freed* v. *Manchester Service, Inc.*, 165 Cal.App.2d 186, 190 [331 P.2d 689].) ▮ The only allegation relied upon by defendants as showing justification is that State Farm had issued an automobile public liability insurance policy to the person whose negligence caused the injuries to the Halversons. In our opinion this allegation does not establish justification.

▮ The conduct of an insurance company in inducing an injured person to repudiate his contract with an attorney may be detrimental not only to the interests of the attorney but also to the interests of the client since, as we have seen, the client, in addition to being deprived of the aid and advice of his attorney, may also be liable for the full contract fee. Defendants argue that the policy of the law is to encourage settlement, that an insurance company has a legal duty to effect a settlement of a claim against its insured in an appropriate case (*Comunale* v. *Traders & General Ins. Co.*, 50 Cal.2d 654, 658 et seq. [328 P.2d 198]) and that furtherance of the actor's own economic interests will justify an intentional interference with a contractual relationship in some circumstances where his interests are threatened by the contract. However, these considerations standing alone cannot justify inducing the Halversons to repudiate the contract and to deprive plaintiffs of its benefits. So far as appears from the complaint, no cause for the dismissal of plaintiffs existed, no efforts were made to negotiate with them, and there is no indication that State Farm could not have protected its interests and obtained a satisfactory settlement without interfering with the contract.

The judgment is reversed with directions to overrule the demurrer.

Traynor, J., Schauer, J., McComb, J., Peters, J., White, J., and Dooling, J., concurred.