[Civ. No. 39050. First Dist., Div. Two. Jan. 18, 1977.]

JAMES DRYDEN et al., Plaintiffs and Appellants, v.
TRI-VALLEY GROWERS, Defendant and Respondent.

**COUNSEL**

Minasian, Minasian, Minasian, Spruance & Baber, William H. Spruance and Paul R. Minasian for Plaintiffs and Appellants.

Kerner, Colangelo & Imlay, Francis Kerner and Alexander R. Imlay for Defendant and Respondent.

OPINION

KANE, J.—Plaintiffs, James Dryden, individually, and with Paul R. Minasian and Malcolm R. Minasian acting as a partnership of Dryden, Minasian & Minasian, appeal from the trial court's judgment dismissing the action against respondent Tri-Valley Growers after the demurrer to the third, fourth, fifth and sixth causes of action of the first amended complaint (complaint) was sustained without leave to amend.

The background facts appearing in the complaint reveal that commencing in 1970 appellants entered into a series of contracts with Henry and Margaret Irving (Irvings), the owners of Villa D'Oro Olive Oil Company, an olive oil processing plant located in Butte County, California. The contracts, which by incorporation became a part of the complaint, provided for the sale of certain waste products of olive oil production, including cracked, dried and de-oiled olive pits, olive pumice (the skin and meat of the olive), and olive oil soap stock (hereinafter: by-products or materials) to appellants. For the purpose of utilizing and selling such materials, appellants installed conveyors, wooden sideboards and building supports on the premises of Villa D'Oro. While some of the materials were subject to immediate sale and delivery, others were to be produced and delivered in the future. With regard to the purchase of future products, appellants were granted a right of option extending until July 15, 1982. The contracts provided that the provisions contained therein would bind not only Irvings, the original sellers, but also the successor owners of the Villa D'Oro Olive Oil Company.

The facts further disclose that following the execution of the subject contracts a legal dispute arose between the parties. As a result, in letters dated June 16 and September 11, 1973, the Irvings advised appellants that they intended to rescind and cancel the subject contracts on grounds of material breach and fraudulent representations on the part of appellants. An action filed in Butte County followed, in which appellants sought declaratory and related relief against the Irvings.

While the Butte County action was pending, by a contract concluded on or about May 23, 1974, the Irvings transferred the ownership of the plant to respondent Tri-Valley Growers. Thereupon, appellants brought the present action against respondent and several unnamed persons. The complaint purported to state causes of action on tort theories of intentional interference with contractual and/or advantageous economic

and business relationships. General damages were sought in the sum of $1,000,000; special damages in the sum of $1,000,000; and exemplary damages in the sum of $5,000,000. Respondent filed a general demurrer to the original complaint which was sustained with leave to amend. Upon the filing of the first amended complaint, respondent again demurred, claiming that the third, fourth, fifth and sixth causes of action failed to state facts sufficient to constitute a cause of action. This time the trial court sustained the demurrer without leave to amend and dismissed the case against respondent.

Appellants insist that the facts stated in the third, fourth, fifth and sixth counts of the complaint are sufficient to support a cause of action based on the tort theory of intentional interference with contractual relations and/or on the broader concept of interference with prospective economic advantage (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815 [122 Cal.Rptr. 745, 537 P.2d 865]; *Zimmerman* v. *Bank of America* (1961) 191 Cal.App.2d 55 [12 Cal.Rptr. 319]; *Freed* v. *Manchester Service, Inc.* (1958) 165 Cal.App.2d 186 [331 P.2d 689]; *Romano* v. *Wilbur Ellis & Co.* (1947) 82 Cal.App.2d 670 [186 P.2d 1012]). A review of the governing legal principles along with an examination of the factual allegations of the complaint has led us to the conclusion that the judgment of the trial court must be affirmed.

■ It is, of course, a well established general rule that one who, without a privilege to do so, induces a third person not to perform a contract with another is liable to the other for the harm caused thereby (*Herron* v. *State Farm Mutual Ins. Co.* (1961) 56 Cal.2d 202, 205 [14 Cal.Rptr. 294, 363 P.2d 310]; *Imperial Ice Co.* v. *Rossier* (1941) 18 Cal.2d 33, 35 [112 P.2d 631]; *Augustine* v. *Trucco* (1954) 124 Cal.App.2d 229, 244 [268 P.2d 780]; Rest., Torts, § 766). It is likewise settled that the tort of interference with contract is merely a species of the broader tort of interference with prospective economic advantage; and while the elements of the two actions are similar, the existence of a legally binding agreement is not a *sine qua non* to the maintenance of a suit based on the more inclusive wrong (*Buckaloo* v. *Johnson, supra,* at p. 823; *Builders Corporation of America* v. *United States* (N.D.Cal. 1957) 148 F.Supp. 482, 484).

In proceeding to analyze the precise issue presented for determination, we initially observe that despite the broad language of the complaint purporting to state a cause of action for interference with "advantageous relationships, procedures and business," the gist of appellants' grievance

is that, by buying the Villa D'Oro Olive Oil Plant from Irvings, respondent unjustifiably interfered with and induced the breach of the existing contracts between appellants and Irvings. The vital issue awaiting adjudication, therefore, is whether the disputed counts stated sufficient facts to support a cause of action under the theory of interference with contractual relations.

The elements of a cause of action predicated on interference with contract are well defined. ■ Accordingly, in order to plead an actionable wrong under this theory, plaintiff must allege that (1) he had a valid and existing contract; (2) *the defendant had knowledge of the contract and intended to induce its breach*; (3) the contract was in fact breached by the contracting party; (4) *the breach was caused by the defendant's unjustified or wrongful conduct*; and (5) the plaintiff has suffered damage (*Springer* v. *Singleton* (1967) 256 Cal.App.2d 184, 187-188 [63 Cal.Rptr. 770, 27 A.L.R.3d 1220]; see also *Abrams & Fox, Inc.* v. *Briney* (1974) 39 Cal.App.3d 604, 608 [114 Cal.Rptr. 328]; *Greenberg* v. *Hollywood Turf Club* (1970) 7 Cal.App.3d 968, 975 [86 Cal.Rptr. 885]; *Freed* v. *Manchester Service, Inc., supra*, at p. 189).

When tested by the foregoing standards, the challenged causes of action display blatant deficiencies on their face, rendering them vulnerable to a general demurrer.

Thus, the third and fifth causes of action allege that respondent acquired knowledge of the contracts entered into between appellants and Irvings only on May 24, 1974, one day *after* the execution of the purchase contract with the Irvings.[1] It is elementary that interference with contractual rights and economic advantage is an intentional tort. Accordingly, it has been held that an action for interference with contractual rights lies only if the defendant's act *induced* the breach of contract between the plaintiff and the third party or if the defendant

---

[1]The pertinent portion of the complaint reads as follows: "*Plaintiffs* are informed and believe and on that basis *allege that defendant Tri-Valley Growers did accept control of* such real and personal property of defendants Irving used in the processing and production of olive oil and known commonly as the *Villa D'Oro Olive Oil Plant on or about May 23, 1974.* That *on May 24, 1974, plaintiffs served by mail upon the defendant Tri-Valley Growers copies of each of the contracts* attached hereto as Exhibits A through E and did further provide and serve on such date written notice of the existence of legal proceedings between plaintiff and defendant Irving seeking to specifically perform each of such contracts in the County of Butte, Superior Court Actions Nos. 56112 and 56113 and of the existence in each of such contracts of provisions binding the successor owners of such olive oil plant to perform each of the terms of the contracts." (Third Cause of Action, ¶ II; see to the same effect: Fifth Cause of Action, ¶ II; italics added.)

*purposely* caused a third person not to perform the contract with another (*Springer* v. *Singleton; Freed* v. *Manchester Service, Inc.; Buckaloo* v. *Johnson,* all *supra*; Rest., Torts, § 766[2]). Since the third and fifth causes of action not only fail to indicate that respondent induced or otherwise purposely caused the breach of the contract, but also fail to allege that at the time of purchasing the plant respondent was even aware of the existence of previous contracts between appellants and Irvings, such causes of action are fatally defective.

Appellants' novel proposition that in the counts at dispute a cause of action for tortious interference with contractual rights was stated, because it is alleged that after having learned about the previous contracts between appellants and Irvings respondent failed to rescind or cancel the purchase contract of the plant, is supported by neither reason nor law. While the law rightly prohibits an intentional interference with contractual rights or beneficial economic relations existing between others, there is no equivalent duty to rescind a contract lawfully entered into on the ground that it might offend the legal rights of others (cf. Rest., Torts, § 766, com. c). On the contrary, it is well settled that no actionable wrong is committed where, as here, the defendant's conduct consists of something which he had an absolute right to do (*Caldwell* v. *Gem Packing Co.* (1942) 52 Cal.App.2d 80 [125 P.2d 901]; *Sweeley* v. *Gordon* (1941) 47 Cal.App.2d 385 [118 P.2d 16]; *Augustine* v. *Trucco, supra*).

Turning to the fourth and sixth causes of action, we observe that they contain alternative allegations that the olive oil processing plant was obtained by respondent with prior knowledge of the contracts between appellants and Irvings. Furthermore, it is alleged that respondent interfered with said contracts by inducing the Irvings to sell the plant and by refusing thereafter to perform the terms and provisions of the contracts; that said acts of respondent were undertaken knowingly and intentionally for the purpose of preventing the performance of said contracts and that as a direct result of respondent's conduct appellants

---

[2]Restatement, Torts, section 766 provides that "Except as stated in Section 698, one who, without a privilege to do so, *induces or otherwise purposely causes* a third person not to (a) perform a contract with another, or (b) enter into or continue a business relation with another is liable to the other for the harm caused thereby."

Comment d. to that section states in pertinent part: "*The rule stated in this Section applies to any purposeful causation* whether by inducement or otherwise. *The essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability under this rule* even if it has the unintended effect of deterring the third person from dealing with the other." (Italics added.)

incurred sizeable damages. While the aforestated allegations seemingly support a cause of action based on interference with contractual rights, when read in light of the record as a whole, they too fail to withstand an attack by demurrer.

It is axiomatic that a general demurrer may consider not only the facts appearing upon the face of the complaint but also any matter of which the court is required to, or may, take judicial notice (Code Civ. Proc., § 430.30; *Hinckley* v. *Bechtel Corp.* (1974) 41 Cal.App.3d 206 [116 Cal.Rptr. 33]; *Legg* v. *Mutual Benefit Health & Accident Assn.* (1960) 184 Cal.App.2d 482 [7 Cal.Rptr. 595]; 3 Witkin, Cal. Procedure (2d ed. 1971) § 798, p. 2412). In the case at bench the record shows that the trial court took judicial notice of two letters incorporated in the second amended complaint filed by appellants against the Irvings in the Butte County Superior Court action. As indicated before, in said letters, dated June 16 and September 11, 1973, respectively, appellants were notified that due to a number of reasons, including material breach of contract, fraudulent inducement to enter into contracts, fraudulent representations made by appellants, the Irvings elected to cancel and rescind the contracts relative to the sale of olive oil by-products.

The purported cancellation and rescission of the contracts at issue prior to the sale of the plant to respondent bears special significance with regard to the determination of this case.

It has been repeatedly held that a plaintiff, seeking to hold one liable for unjustifiably inducing another to breach a contract, must allege that the contract would otherwise have been performed, and that it was breached and abandoned by reason of the defendant's wrongful act and that such act was the moving cause thereof (*Augustine* v. *Trucco, supra,* at p. 246; see also *Beckner* v. *Sears, Roebuck & Co.* (1970) 4 Cal.App.3d 504, 507 [84 Cal.Rptr. 315]; *Zimmerman* v. *Bank of America, supra,* at p. 61; *Freed* v. *Manchester Service, Inc., supra,* at p. 189).

The allegations of the fourth and sixth causes of action in conjunction with the matters judicially noticed conclusively demonstrate that the performance of the disputed contracts had been abandoned and discontinued by the Irvings many months prior to the transfer of the plant to respondent. Under these circumstances, proximate causation, a vital element of the cause of action (*Hill* v. *Progress Co.* (1947) 79 Cal.App.2d 771, 780 [180 P.2d 956]), was lacking as a matter of law. It goes without saying that in the absence of a showing that respondent's

act was the proximate cause of the injury, appellants failed to allege a valid cause of action based on interference with contractual relations (*Springer* v. *Singleton*; *Abrams & Fox, Inc.* v. *Briney*, both *supra*).

But quite apart from the foregoing considerations, there is an important additional reason why the demurrer must be upheld in the instant case. ■ The record before us shows without any ambiguity that respondent, which is being sued for wrongful interference with contractual relations, was a party to the contracts with the performance of which it allegedly interfered. This circumstance is demonstrated not only by the allegations of the complaint which *for the purpose of demurrer* must be regarded as true (*Gressley* v. *Williams* (1961) 193 Cal.App.2d 636, 638-639 [14 Cal.Rptr. 496]), but also by the agreements incorporated in, and attached to, the complaint. Thus, as appellants themselves allege, *the agreements* in dispute explicitly provide that the provisions therein "*shall bind the Seller, any successors, assigns,* executors, or heirs *of Seller,* whether the olive oil company and plant shall remain doing business under the same or different form, same or different name, or shall be transferred . . . to another location in the State of California . . ." (italics added).[3]

While the California cases make oblique references that an action for intentional interference with contractual relationship lies only against a third person (*Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224, 232 [11 Cal.Rptr. 97, 359 P.2d 465]; *Fifield Manor* v. *Finston* (1960) 54 Cal.2d 632, 635 [7 Cal.Rptr. 377, 354 P.2d 1073, 78 A.L.R.2d 813]; *Herron* v. *State Farm Mutual Ins. Co.*; *Abrams & Fox, Inc.* v. *Briney*, both *supra*), no California case has been presented or found which has squarely raised and adjudicated this particular issue. The cases decided by the federal courts and the courts of the sister states, however, firmly indicate that the tort of malicious interference with contractual relations by inducing a breach of contract is a remedy created by the common law to compensate one whose contractual relations with others are interfered with *by a third person* (*Hein* v. *Chrysler Corporation* (1954) 45 Wn.2d 586 [277 P.2d 708, 714]; see also *Rosenkoff* v. *Finkelstein* (D.C. Cir. 1952) 195 F.2d 203 [90 App.D.C. 263]; *Smyth Sales* v. *Petroleum Heat & Power Co.* (3d Cir. 1942) 128 F.2d 697; *Osgoodby* v. *Talmadge* (2d Cir. 1930) 45 F.2d 696; *Allison* v. *American Airlines* (N.D.Okla. 1953) 112 F.Supp. 37;

[3]In short, as the ensuing discussion demonstrates, appellants, by their own allegations, have pleaded themselves out of a cause of action for claimed interference with contractual relationships. Whether respondent did, in fact, become a party to the contracts in question is not before us and is, therefore, not decided.

*Doremus* v. *Hennessy* (1898) 176 Ill. 608 [52 N.E. 924]). Accordingly, *it has been held that an action for inducing a breach of contract will not lie against the party to the contract* (*Daly* v. *Nau* (Ind.App. 1975) 339 N.E.2d 71, 76; see also *Canister Co.* v. *National Can Corp.* (D.Del. 1951) 96 F.Supp. 273; *Kiyose* v. *Trustees of Indiana University* (Ind.App. 1975) 333 N.E.2d 886; *Hein* v. *Chrysler Corporation, supra*; accord: Prosser on Law of Torts (4th ed. 1971) § 129, p. 934).

We are in full agreement with the conclusion reached in the above cases. It is obvious that if an action is brought for interference with contractual relationship by one party to a contract against another who is also a party to that same contract, the grievance of the plaintiff is, in essence, breach of contract; and, in such case, plaintiff is entitled to recover all damages flowing from the breach. In such an instance to allow the plaintiff to sue under the tort theory of wrongful interference with contractual rights would not only be superfluous, but also would enable him to recover tort damages (e.g., punitive damages, damages for mental suffering) to which he is not entitled under California law. ▪ It is well settled in this state that punitive damages may not be awarded in an action based on breach of contract, even though the defendant's breach was willful or fraudulent (Civ. Code, § 3294; *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 405 [303 P.2d 1029]; *Freedman* v. *The Rector* (1951) 37 Cal.2d 16, 21-22 [230 P.2d 629, 31 A.L.R.2d 1]; *Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331, 336 [126 Cal.Rptr. 731]). Similarly, as a general rule, damages for mental suffering may not be granted for breach of contract (*O'Neil* v. *Spillane* (1975) 45 Cal.App.3d 147, 159 [119 Cal.Rptr. 245]; *Asher* v. *Reliance Insurance Company* (N.D.Cal. 1970) 308 F.Supp. 847, 851-852; 1 Witkin, Summary of Cal. Law (8th ed. 1973) § 651, p. 553).

The judgment is affirmed.

Taylor, P. J., and Rouse, J., concurred.

Petitions for a rehearing were denied February 17, 1977, and the opinion was modified to read as printed above. Appellants' petition for a hearing by the Supreme Court was denied March 17, 1977.